[Cite as *In re C.B.*, 2013-Ohio-5040.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| C.B., JR., | Hon. William B. Hoffman, J. |
| J.B., | Hon. Craig R. Baldwin, J. |
| Z.B., | |
| Z.B., AND | Case Nos. 2013AP070029, |
| B.B. | 2013AP070031 |
| NEGLECTED/DEPENDENT<br>CHILDREN | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County Court
                             of Common Pleas, Juvenile Division Case
                             No. 12 JN 00193

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      November 8, 2013

APPEARANCES:

For Appellant, Father                For Appellee

JOHN A. GARTRELL                     DAVID HAVERFIELD
Assistant Public Defender            Tuscarawas County Job & Family Service
153 N. Broadway                      389 16th Street SW
New Philadelphia, Ohio 44663         New Philadelphia, Ohio 44663

For Appellant, Mother                Guardian ad Litem

ADAM WILGUS                          KAREN DUMMEMUTH
401 Tuscarawas St. W. – Suite 200    349 East High Avenue
Canton, Ohio 44702                   P.O. Box 494
                                     New Philadelphia, Ohio 44663

*Hoffman, J.*

{¶1}   In Tuscarawas App. No. 2012 AP 07 0029, Appellant Kathleen Butner ("Mother") appeals July 18, 2013 Findings of Fact/Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges and responsibilities with respect to her minor children, C.B., J.B., Z.B., Zo.B., and B.B., and granted permanent custody of the children to Appellee Tuscarawas County Job and Family Services.  In Tuscarawas App. No. 2012 AP 07 0031, Appellant Christopher Butner ("Father") also appeals the July 18, 2013 Findings of Fact/Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated his parental rights, privileges and responsibilities with respect to the aforementioned minor children, and granted permanent custody of the children to Appellee.

STATEMENT OF THE FACTS AND CASE

{¶2}   Mother and Father are the biological parents of C.B. (dob 2/25/99), J.B. (dob 3/8/02), Z.B. (dob 9/19/04), Zo.B. (dob 8/1/07), and B.B. (dob 7/20/10). Mother and Father are married and live together.

{¶3}   On April 4, 2012, the trial court issued an ex-parte order placing the five minor children in the protective custody of Appellee.  Appellee filed a complaint on April 5, 2012, alleging the children were neglected and dependent, and seeking temporary custody.  The complaint was based upon the fact the children were not being educated; had significant delays, developmentally and socially; and had varying medical conditions which were not being adequately treated.

{¶4}    The trial court conducted an adjudicatory hearing on May 2, 2012.  The trial court granted Appellee's request to amend the complaint.  Mother and Father stipulated to the amended complaint, finding the children to be neglected and dependent.

{¶5}    Appellee filed a Motion to Modify Previous Dispositions on February 4, 2013.  Therein, Appellee indicated it continued to have significant concerns regarding the parents' ability to parent the children based upon the progress made with case plan services coupled with their psychological evaluations and resulting diagnoses. The trial court conducted a hearing on the motion on June 6, 2013.

{¶6}    Elizabeth Benedetto, the ongoing case manager assigned to the family, testified Appellee received a report in March, 2012, regarding C.B., the oldest child, being aggressive and threatening to stab himself.  The report further indicated all five of the children had medical problems and were home schooled.  The girls, who were age 8 and 4 at the time, wore diapers and drank from baby bottles.  Mother expressed concerns regarding Father's mental health, stating he had made comments about suicide.  Mother worried about how Father would care for the other children while she was with C.B. at his appointments.  Mother felt helpless, claiming she had no family support.  The family had an extensive history with Appellee.

{¶7}    Benedetto stated the children were skinny, pale-skinned and had sunken eyes when they arrived in custody.  Mother and Father reported C.B. had ADHD; J.B. had a seizure disorder and ADHD; Z.B. had a seizure disorder, had a feeding tube which she would need her entire life, had been diagnosed with failure to thrive, had not been expected to live past the age of three, had been diagnosed with Fragile X

syndrome, and had an abnormal ninth chromosome; and Zo.B. had a seizure disorder and a brain tumor. Parents did not report any medical issues with the youngest child, B.B. J.B., Z.B., and Zo.B. took seizure medication. J.B. also took prescription medication for ADHD.

{¶8} Benedetto described the children's educational status. Parents advised Appellee the children were home schooled, using an online program. However, upon further investigation, Appellee learned the children had not logged onto the program in months and the school district was considering filing truancy charges. The children had not had any type of schooling in two years. The school district had not approved the home school program Parents were currently using or the program the family previously utilized.

{¶9} After approximately two weeks in foster care, Z.B. and Zo.B. were appropriately toilet trained and no longer drinking out of baby bottles. Z.B. did not need or use the feeding tube once she was in foster care, and the device was removed in July, 2012. Z.B. was not having any feeding issues. J.B., Z.B., and Zo.B. were taken off the seizure medications. J.B. did continue to take a prescription medication for his focus issues.

{¶10} With regard to the children's education, Benedetto testified they are in public school and have done "amazing". The oldest two boys, C.B. and J.B. are excited to be in school, interact well with their peers, and enjoy the camaraderie of the school community. C.B. played on the 8th grade football team and was a team leader. His self-esteem had greatly improved. J.B. has an accommodation plan to help with his educational delays. His teachers reported consistent, daily progress. Since arriving in

foster care, the children have "blossomed", they play, interact, and visit the library. C.B., the oldest, struggled significantly with letting go of his control of his siblings. From the time he was seven, C.B. was the family caretaker. C.B. is doing well and starting to live like a "normal child".

{¶11} Parents' case plans required them to complete psychological evaluations and follow with individual counseling. Father was also required to undergo a drug and alcohol assessment. In addition, Parents' were to maintain stable housing and employment. Father admitted smoking "spice", a synthetic marijuana. At the time of the hearing, Father had finished the initial phase of his drug and alcohol screen, and was working through the second phase. Parents had supervised visitation throughout the pendency of the matter. They consistently visited the children. Benedetto had no particular concerns relative to their interaction with the children. C.B. did not attend visitation as such resulted in extreme stress for him. His foster parents and counselors have encouraged him to see Parents. Occasionally, J.B. would forego seeing Parents, which was also the result of extreme stress.

{¶12} Although Parents have done everything on their case plans, Benedetto testified it was in the children's best interest to be placed in the permanent custody of Appellee. Benedetto raised concerns based upon Parents' prior involvements with Appellee as well with Stark County Children's Services. She feared Parents would revert back to their old ways as they had done in the past.

{¶13} C.B. and J.B. are in the same foster home, while the youngest three children are together in another foster placement. Benedetto believed there was a very good chance both placements would become permanent.

{¶14} Barbara Schwartz, a clinical therapist at the Chrysalis Counseling Center in New Philadelphia, Ohio, testified she conducted the evaluations of Mother and Father. Mother described an extremely traumatic childhood/young adulthood filled with emotional and physical abuse. Mother reported she had been beaten, raped, confined, starved, and shot. The traumas had been inflicted upon Mother by both her biological parents and foster parents. Schwartz indicated Mother's report struck her as unusual as it was expansive and dramatic, yet Mother provided little detail. Mother also informed Schwartz about the children's numerous medical issues. Mother had an irrational sense of the world as a terrifying place. After completing interviews and studying the results of the psychological testing, Schwartz diagnosed Mother with paranoid personality disorder, schizoid personality traits, and factious disorder, more commonly known as Munchausen syndrome. Schwartz expressed concern regarding the children being placed back in Mother's care due to the high recidivism rate of individuals with factious disorder. The safety of the children is the most important aspect when treating individuals with this disorder.

{¶15} Schwartz diagnosed Father as having an adjustment disorder with anxiety and dependent personality traits. Father did not present with any psychosis or delusional thought disorders. Schwartz indicated Father was a hands-off parent. Father's long term prognosis was poor. Schwartz explained both Mother and Father would have to change their patterns of interaction. Father's deference to Mother regarding the children's medical treatments and educational decisions caused Schwartz a great deal of concern.

{¶16} Via Findings of Fact/Judgment Entry filed July 18, 2013, the trial court terminated Mother and Father's parental rights, privileges, and responsibilities. The trial court found the children could not and should not be placed with either parent within a reasonable time, and it would be in the children's best interest to grant permanent custody to Appellee.

{¶17} It is from this judgment entry Mother appeals, assigning as error:

{¶18} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶19} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶20} Father appeals from the same entry, raising as error:

{¶21} "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT BE PLACED WITH FATHER AND MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST."

{¶22} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

MOTHER I, II

Father I

**{¶23}** Because Mother and Father's assignments of error require identical analysis, we shall address said assignments of error together.  In her first assignment of error, Mother maintains the trial court's finding the children could not be placed with her within a reasonable time was against the manifest weight and sufficiency of the evidence. In her second assignment of error, Mother contends the trial court's finding an award of permanent custody was in the best interest of the children was against the manifest weight and sufficiency of the evidence.  In his sole assignment of error, Father asserts the same challenges.

**{¶24}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶25}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶26}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶27}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶28}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C.

2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶29}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶30}** Parents argue they each complied with and completed their respective case plans. Parents testified they had come to recognize the shortcomings in their parenting methods through counseling, and both believed the counseling would enable them to improve their parenting skills. Parents submit they maintained stable housing as they lived at the same home for five years prior to Appellee's involvement, and the rent and utilities were timely paid.

**{¶31}** As set forth in our Statement of the Facts and Case, supra, Barbara Schwartz diagnosed Mother with paranoid personality disorder, schizoid personality traits, and factious disorder, more commonly known as Munchausen syndrome. Schwartz expressed concerns about the children being returned to Parents' home because the likelihood Mother would revert to her old behaviors was high. Mother needed to be accountable for her actions. Further, Schwartz feared Father, who has dependent personality traits, could not be assertive with Mother regarding the children's

medical care and educational needs. Schwartz believed it would be dangerous for the children to be returned.

{¶32} With respect to the best interest finding, the evidence revealed, despite the myriad of medical problems Parents claimed the children suffered, only one child had an actual medical condition. The children were thriving in foster care. They were physically healthy and emotionally stable. They enjoyed going to school and making friends.

{¶33} Based upon the foregoing, we find the trial court's findings the children could not be placed with Parents within a reasonable time, and an award of permanent custody was in the best interest of the children were not against the manifest weight of the evidence and were based upon sufficient evidence. Mother's first and second assignments of error are overruled. Father's sole assignment of error is overruled.

{¶34} The judgment of the Tuscarawas County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Baldwin, J. concur

_____
HON. WILLIAM B. HOFFMAN

_____
HON. W. SCOTT GWIN

_____
HON. CRAIG R. BALDWIN

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:                                           :
                                                 :
C.B., JR.,                                       :
J.B.,                                            :
Z.B.,                                            :
Z.B., AND                                        :
B.B.                                             :
                                                 :
NEGLECTED/DEPENDENT                              :
CHILDREN                                         :
                                                 :          JUDGMENT ENTRY
                                                 :
                                                 :          Case No. 2013AP070029


For the reasons stated in our accompanying Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Family Court Division, is affirmed.  Costs assessed to Appellant.


                                    _____
                                    HON. WILLIAM B. HOFFMAN


                                    _____
                                    HON. W. SCOTT GWIN


                                    _____
                                    HON. CRAIG R. BALDWIN

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE:                                    :
                                          :
C.B., JR.,                                :
J.B.,                                     :
Z.B.,                                     :
Z.B., AND                                 :
B.B.                                      :
                                          :
NEGLECTED/DEPENDENT                       :
CHILDREN                                  :
                                          :        JUDGMENT ENTRY
                                          :
                                          :        Case No. 2013AP070031


     For the reasons stated in our accompanying Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to Appellant.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. W. SCOTT GWIN


_____
HON. CRAIG R. BALDWIN